It follows that, the case being here properly on a petition to superintend and revise, the appeal is dismissed, and the judgment of the District Court in the matter brought up for review, is affirmed.

Case No. 2353 affirmed.

Case No. 2366 dismissed.

---

## THE HARLEM RIVER NO. I.

## THE MARGARET MONK.

(Circuit Court of Appeals, Second Circuit. April 6, 1925.)

No. 290.

Towage ⬅11(7)—Master of steam tug negligent in manner of passing under bridge with two barges in tow.

Experienced master of steam tug with two barges in tandem tow, attempting to pass under difficult bridge at flood tide, in a manner which he must have known would cause first barge to strike abutment, making striking of second barge inevitable, *held* negligent.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by the Wayne Transportation Company against the steam tug Harlem River No. 1, J. Raymond Russell claimant, in which the coal boat Margaret Monk, Thomas J. Monk claimant, was impleaded as respondent under admiralty rule 56. From a decree for libelant dismissing petition as to the Monk, the claimant first named appeals. Affirmed.

The opinion of Campbell, District Judge, in the court below, here follows:

"On the petition of the claimants the coal boat Margaret Monk was impleaded as a respondent under the fifty-sixth rule in admiralty.

"The steam tug Harlem River No. 1 took in a tandem tow the coal barges Margaret Monk and Wayne No. 9, bound under High Bridge. The day was clear; the tide flood. Both barges were light; the Monk, being the hawser boat, was on two short hawsers, and the Wayne No. 9 was made fast astern as close up as possible, with corner lines and cross lines.

"In this position the tug attempted to take the two barges under High Bridge, and, this being a very hard bridge to pass under safely, the master of the tug directed the barge captains to make their lines tight and keep their boats close together to prevent injury. The lines were made fast by the captain of the Monk, as directed by the master of the tug, and the lines from the Wayne to the Monk, and from the Monk to the Wayne, were kept fast until, as the tug passed with her tow under the bridge, she allowed the Monk to scrape against the abutment, then strike and bound off, which brought the Wayne into contact with the abutment of said bridge, causing her lines to part and the Wayne to go adrift and strike the abutment on the other side.

"After taking the Monk through under the bridge, the tug returned and picked up the Wayne, which had received substantial damages caused by her striking the abutment of said bridge. In order to take two barges in a tandem tow safely under said bridge on a flood tide, it is necessary, because of the effect of the tide, to pass under the bridge in a particular manner, so that the first barge will not touch the abutment, because, if the first barge touches the abutment, it is impossible to prevent the second barge from striking.

"In the instant case the tug did not start through under the bridge in the manner necessary for a safe passage, and her master, who was experienced in such navigation, should not have attempted to go through in the manner he did, because he must have known that danger was imminent, and this constituted negligence.

"The master of the tug said that the lines were all right before starting, as did also the captain of the barge Wayne No. 9, and I am of the opinion that there was no slack in the lines, but that they were safely made fast when the Monk came into contact with the abutment, and the injuries sustained by the Wayne No. 9 were due to the negligence of the tug in allowing the Monk to come into contact with the abutment and thereby causing the parting of the lines and the striking of the abutment by the Wayne No. 9. Neither the Margaret Monk nor the Wayne No. 9 had motive power, and neither of said boats was in any way to blame.

"A decree may be entered against the steam tug Harlem River No. 1 in favor of the libelant, with costs and the usual order of reference, and dismissing the petition against the Margaret Monk, with costs against the petitioners claimants.

"Settle decree on notice."

Alexander & Ash, of New York City (Edward Ash, of New York City, of counsel), for appellant.

Richard F. Lenahan, of New York City, for claimant of the Margaret Monk.

Before ROGERS, MANTON, and HAND, Circuit Judges.

PER CURIAM. Decree affirmed, on the opinion in the court below.

═══

## McLAREN PRODUCTS CO. v. CONE CO. OF AMERICA.

(District Court, E. D. New York. April 14, 1925.)

1. Patents ⬦283(1)—If decree will protect all parties, defense of lack of title in plaintiff is not good.

In suit for infringement of patent, where decree will amply protect all parties, defense denying plaintiff's title is not good, in view of fact that legal title was held by trustee.

2. Patents ⬦328—1,071,027, claims 2, 3, 7, 23, 25, 33, 34, 35, 36, 64, 66, 67, 69, for ice cream cone machine, held valid and infringed.

Bruckman patent, No. 1,071,027, for ice cream cone machine, claims 2, 3, 7, 23, 25, 33, 34, 35, 36, 64, 66, 67, 69, *held* valid and infringed.

3. Patents ⬦327—Adjudication that patent is valid held presumptively correct in subsequent litigation.

Although one is entitled to have his case decided on facts proven therein, former adjudications that patent is valid are presumptively correct and of strong persuasive force.

4. Patents ⬦129—Receipt of license under patent and consent decree held not to estop one from showing state of art as bearing on scope of patent in subsequent suit.

Although one might be estopped from denying validity of patent under which he received license and by consent decree, he was not estopped, in subsequent suit relating to patent, from showing state of art as bearing on scope of patent.

In Equity. Suit by the McLaren Products Company against the Cone Company of America for infringement of a patent. Decree for plaintiff.

Cooper, Kerr & Dunham, of New York City, Albert E. Dieterich, of Washington, D. C., Henry J. Savage, of Chicago, Ill., and Thomas J. Byrne, of New York City, for plaintiff.

Fred B. Fetherstonhaugh and Russel Smart, both of Ottawa, Canada, James J. Kennedy and Sharon Graham, both of New York City, and Harold G. Fox, of Toronto, Canada, for defendant.

INCH, District Judge. This is a patent suit. The suit is brought by a trustee of the legal title for the benefit of Alexander McLaren, the equitable owner, etc., and the McLaren Products Company, an exclusive licensee.

The defendant is a corporation organized under the state of Delaware, and having a regular place of business at Brooklyn, N. Y., Eastern District.

The complaint is in the usual form, except that it originally claimed that the defendant was infringing three letters patent belonging to plaintiff, to wit, Abrahams patent, No. 841,211, dated January 15, 1907, a reissued patent of Lanier No. 14,651, dated May 20 1919, and the Bruckman patent, No. 1,071,027, dated August 26, 1913. By proper amendment and at the trial the plaintiff relied solely on the said Bruckman patent.

The claims of the patent of Bruckman, which plaintiff asserts are valid and have been infringed, are 2, 3, 7, 23, 25, 33, 34, 35, 36, 64, 66, 67, and 69. These claims are well stated as follows (I quote from plaintiff's brief):

"Claim 2. In a machine of the class described (automatic pastry making machine adapted for making ice cream cones and other similar articles—patent specification, p. 1, lines 6 to 13, inclusive): A rotatable wheel (table *4*); molding devices carried by said wheel (sectional female molds 13 and male molds or cores *20*); means for loading said molding devices as they arrive at a predetermined place (batter tank *68a* and pump mechanism *68a*—Plaintiffs' Exhibits 44–48, inclusive—which load the molding devices as the molding devices arrive opposite the same); means for discharging the molded product from said molding devices after said product has been molded thereby (the cam *33–31* which effects a preliminary lift of the core, the cam track *67* which unlocks the female mold sections and the butterfly cam mechanism *39* which opens the female molds while the cam *31* holds the cores well within the cones in the female cavities until the female mold sections are fully separated to strip the cones from the baking surfaces and permit the cones to drop from between the mold sections—see position of cores in the fully opened mold unit, Plaintiffs' Exhibit 45; see, also, Defendants' Exhibit 42); means for trimming the product after it leaves the molding devices (the trimming mechanism *69a–69b*—Plaintiffs' Exhibits 44–48, inclusive); means for delivering it— the product from the machine (chute *70a*